UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JENNIFER STURGILL, KATTY GODOY,
ABIGAIL HERNANDEZ, and
JANIRA GUEVARA,

        Plaintiffs,

                                        Case No. 1:06-cv-916
v

                                        Hon. Wendell A. Miles

LA INSURANCE XXIX, INC.,
a/k/a numerous other corporate and
assumed names, and
HAFIA "HOLLY" HERMIZ and
MAJID "MIKE" HERMIZ,
personally and individually,

        Defendants.

_____/


OPINION AND ORDER ON DEFENDANTS' MOTION TO SET ASIDE DEFAULT


        This is an action brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201

et seq.  The matter is currently before the court on a twice-filed motion by the defendants to set

aside the entry of default against them (docket nos. 20, 31).  Plaintiffs have opposed the motion.

For the reasons to follow, the court **DENIES** the motion.


**I**

        Plaintiffs Jennifer Sturgill, Katty Godoy, Abigail Hernandez, and Janira Guevara are

former employees of defendant LA Insurance XXIX, Inc. ("LA Insurance").  Defendants Hafia

Hermiz and Majid Hermiz, who are husband and wife, are also alleged to be former employers of plaintiffs.  Hafia Hermiz is the sole stockholder and director of LA Insurance, and her husband Majid is an "on site" manager for the business, which has several offices in the Grand Rapids area.  Plaintiffs allege that they performed sales, customer service, and basic bookkeeping for the defendants during various dates between January, 2001 and December, 2006.

Plaintiffs further allege that although they were paid on an hourly basis, that they were not paid for all hours they worked for LA Insurance, and that they were not paid time-and-a-half for overtime.  They also allege that they were required to falsify the amount of hours worked, that they were not able to claim all of their hours worked, and that unidentified deductions were taken from the pay which they did receive.  In addition to their claims for backpay and overtime pay under the FLSA, three of the plaintiffs –  Hernandez, Godoy, and Guevara – assert retaliation and wrongful discharge claims under the FLSA, alleging that they were fired after they either complained about their pay or participated in an investigation with the Department of Labor.  All four plaintiffs have also asserted  claims of defamation against Hafia and Majid Hermiz under Michigan common law; these claims are based on plaintiffs' allegations that the Hermizes accused them of being liars and thieves who stole money and customers from LA Insurance.

Plaintiffs filed this action on December 29, 2006.  Their complaint, which includes a demand for jury trial, seeks compensatory and liquidated damages under the FLSA, attorneys' fees under the statute, and compensatory damages for defamation.  Majid Hermiz was personally served with the summons and complaint on January 10, 2007.  On March 27, 2007, plaintiffs

2

filed a motion for substituted service on defendant Hafia Hermiz, who they alleged was attempting to evade service. The motion was granted on April 12, 2007. Substituted service was made on Hafia Hermiz on May 25, 2007.

On June 19, 2007, plaintiffs requested entry of default against the defendants for failure to appear. The clerk entered the default on June 20, 2007. After two additional months passed with no progress on the case, on August 21, 2007, the court entered an order which required plaintiffs to file a motion for default judgment within 30 days, or suffer a dismissal of the complaint without prejudice. On September 4, 2007, plaintiffs filed a motion for default judgment.

After plaintiffs filed their motion for default judgment, defendants, through attorney Austin M. Hirschhorn, filed an appearance in the case – but no answer – on October 12, 2007.[1] On October 30, 2007, defendants, through their current attorney (whose substitution has since been approved by the court) filed the present motion – in paper form – to set aside the entry of default.[2] For reasons which are not apparent, the defendants re-filed their motion electronically on November 19, 2007. A hearing on plaintiffs' motion for default judgment has been adjourned

---

[1] In reviewing the roll of attorneys admitted to practice in this district, the court was not able to locate attorney Hirschhorn's name. The court's local rules require all persons practicing in this court to be a member in good standing of the court's roll of attorneys. W.D.Mich.L.Civ.R. 83.1(i). Attorney Hirschhorn also filed his appearance in paper form, instead of electronically as required by W.D.Mich.L.Civ.R. 5.7. Although attorney Hirschhorn was notified in writing of these deficiencies, the court is not aware that he made any attempt to either seek admission or register for electronic filing. Notwithstanding these omissions, his appearance was duly docketed on behalf of the defendants.

[2] Although filed in paper form on October 30, 2007, the motion and supporting materials were ultimately scanned and docketed on November 6, 2007.

pending resolution of the present motion.  Therefore, no default judgment has been entered, and

the issue is solely whether the clerk's entry of default should be set aside.

## II

As noted above, the defendants filed their motion to set aside the default on October 30,

2007.  The motion states that the defendants learned of the default "earlier this month of

October," although they provide no specific date for when they acquired this knowledge.  Their

brief in support states that "none of the defendants received notice of the entry of Default or

other pleadings" and that their first notice of the default "was through a phone call from the

owner of the Franchisor corporation which licenses" LA Insurance.[3]   No date is given for this

alleged phone call. With their initial paper motion, the defendants filed an affidavit of Hafia

Hermiz, in which she states that she was aware of the litigation during 2007 and learned of the

default in "mid September."  (docket no. 21, ¶ 5).  This would, of course, indicate that she

---

[3]During the hearing on their motion, the defendants blamed their current predicament at
least in part on their contention that they were not given notice of plaintiffs' request for entry of
default, the clerk's entry of default, or plaintiffs' motion for default judgment.  However,
because they had not appeared in the proceeding, the defendants were not entitled to such notice.
 Although Fed.R.Civ.P. 55(b)(2) requires "at least 3 days notice prior to the hearing" on a motion
for default judgment, this requirement only applies "[i]f the party against whom judgment by
default is sought has appeared in the action[.]"  Id.; Antoine v. Atlas Turner, Inc., 66 F.3d 105,
110 (6th Cir. 1995).  The defendants did not appear until attorney Hirschhorn filed his written
appearance on October 12, 2007, after the default had already been entered and plaintiffs had
filed their motion for default judgment.   No hearing has been held on the motion; as noted
above, a hearing was scheduled but subsequently adjourned.
    In addition, when their brief refers to the defendants not having received "other
pleadings," they are clearly not referring to the complaint, which they have not denied receiving.
In this action, no actual "pleadings" have been filed other than the complaint itself.  See
Fed.R.Civ.P 7(a) (defining "pleadings," as distinct from motions).

learned of the default shortly after it was entered, several weeks before the October 30 motion was filed to set it aside.  Hafia Hermiz also states that she was told – ostensibly by attorney Hirschhorn, but this is not entirely clear – that a motion to set aside the default would be filed, and she gives a specific date – October 19, 2007 – for when she and her husband learned that no such motion had yet been filed.  Hafia Hermiz' affidavit does not mention having learned of the default from the owner of the LA Insurance franchise.

On November 9, 2007, the defendants attempted to file a paper affidavit of Majid Hermiz.  This affidavit was rejected for non-compliance with the court's e-filing rules.  Ten days later, on November 19, 2007, the defendants e-filed their second motion to set aside the default, this time accompanied by affidavits of both Hafia and Majid Hermiz.   The motion and accompanying materials appear to be identical to those filed on October 30, with the exception that Hafia Hermiz's newly-filed affidavit now stated that she learned of the default in "early October."  (docket no. 32, ¶ 5).[4]  In his affidavit, Majid Hermiz also states that he learned of the default in "early October."  (docket no. 33, ¶ 5).[5]  However, later on November 19, 2007, the defendants filed yet another affidavit, the third affidavit of Hafia Hermiz.  (docket no. 35)  Once again in this affidavit, Hafia states that she learned of the default in "mid September."   (Id., ¶5) This would mean that Majid Hermiz's affidavit is inconsistent with two of his wife's, insofar as he states that he did not learn of the default until "early October."

---

[4]Hafia Hermiz's second affidavit (docket no. 32) does not bear the scanned image of her signature, as required by W.D.Mich.L.Civ.R. 5.7(d)(iii).

[5]Majid Hermiz's affidavit suffers from the same deficiency as his wife's second affidavit, insofar as it does not bear the scanned image of his signature, as required by W.D.Mich.L.Civ.R. 5.7(d)(iii).

It is unclear why the defendants filed their motion twice, or – more importantly – why the defendants have filed multiple versions of Hafia Hermiz's affidavit, two of which are inconsistent with that of her husband.  It is also unclear precisely what role the "franchisor" for LA Insurance played in the events leading up to the default.  What is clear is that the court is left with serious reservations as to the credibility of the defendants regarding these events.[6]  For this reason, this case presents an unusual situation where the motion to set aside the entry of default must be denied.

In their motion, the defendants rely on both Fed.R.Civ.P. 55(c) and 60(b).  However, Rule 60(b) does not apply here because no "final" judgment or order has been entered in the case.  The applicable rule is 55(c), and the court therefore addresses the standards applicable under that rule for setting aside an entry of default which has not yet been reduced to judgment.

Under Rule 55(c), a court may set aside an entry of default "[f]or good cause shown."  Although a district court has "considerable latitude" under the Rule 55(c) standard, in determining whether a defendant has demonstrated good cause, the court should examine whether "(1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious."  United Coin Meter Co. v. Seaboard Coastline R.R., 705 F.2d 839, 844 (6th Cir.1983) (citations omitted).   This is a more lenient standard than that applied to Rule 60(b) motions where judgment has been entered, although the factors to be considered are the same.  See Shepard Claims Service, Inc. v. William Darrah & Associates, 796 F.2d 190, 194 (6th Cir. 1986) ("Although the elements for relief under Rule 55(c) and Rule 60(b) are substantially

_____

[6]Although the court held a held a hearing on the defendants' motion on December 3, 2007, the defendants did not offer any testimony at the hearing.

the same, the standards are applied more stringently when considering a motion to vacate a default judgment under Rule 60(b)").   The defendants' brief in support points to the applicable legal factors, but offers virtually no analysis as to why their situation justifies relief based on these factors.

The defendants have not denied that they were aware that the action had been filed against them.  According to their written filings, their excuse for the default is that they believed that attorney Hirschhorn was engaged in negotiations on their behalf and that they were surprised to learn of the entry of default during the midst of alleged negotiations.  Therefore, they blame attorney Hirschhorn for the default.  However, they have not submitted his affidavit, and their position is not that there was a misunderstanding between plaintiffs and attorney Hirschhorn; rather, their position appears to be that attorney Hirschhorn is solely to blame.  Plaintiffs' response would appear to confirm this, because plaintiffs state that their counsel did not inform attorney Hirschhorn that the defendants did not need to file an answer.

The Sixth Circuit does not appear to have precisely defined what constitutes "willful" conduct for purposes of the first factor relevant to a Rule 55(c) inquiry.  The cases seemingly equate willfulness with culpability.  See Shepard Claims Service, 796 F.2d at 194 ("To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings").  "Where the party in default satisfies the first two requirements for relief and moves promptly to set aside the default before a judgment is entered, the district court should grant the motion if the party offers a credible explanation for the delay that does not exhibit disregard for the judicial proceedings."  Id. at 195.

Although "[a] default judgment deprives the client of his day in court, and should not be used as a vehicle for disciplining attorneys[,]" id. at 195, the courts they appear to distinguish between a situation involving mere attorney neglect or inattention and one involving a party who displays an intent to thwart or reckless disregard for the proceedings.  See id. at 194.  The Sixth Circuit has also considered the length of the delay, whether there was a "pattern of disregard for court orders or rules[,]" and whether the party took prompt action to file an answer and move to set aside the default upon learning that it had been entered.  See id.  A party should advance a "credible explanation" for any disregard of the proceedings. See  Smith v. Commissioner of Internal Revenue, 926 F.2d 1470, 1480 (6th Cir. 1991) (tax court did not abuse its discretion in refusing to set aside default judgment, where "petitioner had failed to advance a credible explanation for his disregard of judicial proceedings").

Here, the defendants have not met their burden of establishing that their conduct was not willful.  As noted above, earlier in the case the plaintiffs successfully moved for substituted service on Mrs. Hermiz, who they alleged was evading service.  Evasion of service suggests a willful attempt to delay the proceedings.  See Berthelsen v. Kane, 907 F.2d 617, 622 (6th Cir. 1990) (actively evading service is relevant to question of defendant's culpability).

In addition, as also noted above, the defendants have identified two different times, weeks apart, for when they became aware that they had been defaulted:   "mid September" and "early October."  The court finds neither time period credible, given this inconsistency.  Under the circumstances, the defendants have not shown that they took prompt action to file an answer

and move to set aside the default upon learning that it had been entered.[7]

An additional concern is presented by the authorized – but unexplained – participation of a non-party in the events leading to the default.  Although the Hermizes blame attorney Hirschhorn for the default, the plaintiffs' attorney, who has filed her own affidavit with plaintiffs' response, states that attorney Hirschhorn told her that an individual named Anthony Yousif, who "has some ownership interest in the corporation," would be calling her.  In the absence of evidence to the contrary, the court assumes that Mr. Yousif is the same individual identified in the defendants' brief as "the owner of the Franchisor corporation which licenses" LA Insurance, who supposedly informed them of the default during a phone call, as noted above.  As promised, Mr. Yousif did call plaintiffs' attorney to discuss resolving the case.  Plaintiffs' attorney followed the telephone call with a demand letter addressed to Mr. Yousif, who did not respond.[8]   Plaintiffs' attorney then contacted attorney Hirschhorn on more than one occasion, indicating that his clients should file an answer to the complaint.  As we know, no answer was filed.

---

[7]If Mrs. Hermiz learned of the default in "mid September" (as she states in two of her filed affidavits), this means she waited several weeks to attempt to have the default set aside.  As noted above, her third affidavit dates her discovery as "early October," which is when her husband states he learned of the default.  The court questions why multiple affidavits of Mrs. Hermiz have been filed, and why two of them are inconsistent with her husband's.  The defendants have made no attempt to show that the inconsistency is a product of innocent mistake rather than deliberate falsehood.

[8]In their response brief, plaintiffs contend that Mr. Yousif informed plaintiffs' counsel that "rather than pay any verdict, he would simply shut down all of the LA Insurance companies in question."  Plaintiffs' Response to Defendants' Motion to Set Aside Default at 2 n.1.  However, because this particular statement is not provided in verified form, the court is not able to consider it as evidence of an attempt to frustrate the proceedings by preventing plaintiffs from making any recovery.

Perhaps even more important than the evidence provided is the evidence which the defendants have not provided. Based on the evidence provided by plaintiffs, the court finds that attorney Hirschhorn indicated that Mr. Yousif was someone who had authority to speak on behalf of the defendants. However, the defendants have not provided evidence that they even specifically retained attorney Hirschhorn to litigate this case, nor have they provided evidence contradicting Mr. Yousif's authorized role in speaking on their behalf. Moreover, it is curious that the Hermizes' affidavits are silent regarding precisely how they learned of the default and how they learned that no motion had been filed to set it aside. These omissions appear to the court to be more than a product of poor drafting.

The Hermizes' affidavits are also silent regarding Mr. Yousif's role in the events leading to the default and what, if anything, they knew about his involvement in the supposed settlement negotiations. If Mr. Yousif was following the proceedings and was in contact with the Hermizes, this would suggest that the defendants did not simply rely innocently on attorney Hirschhorn to protect their rights, as they have contended.[9] In view of these omissions, the court is unable to find that the defendants have advanced a credible explanation for their disregard of the proceedings.

Yet another relevant consideration is the fact that the defendants have yet to even attempt to file an answer. Even if the court views the inconsistent facts in the Hermizes' favor and concludes that they became aware of the default as late as "early October," they have had in

---

[9]During the hearing on their motion, the defendants at one point argued that Mr. Yousif was acting as "general counsel" for LA Insurance. At another point, they argued that Mr. Yousif had no role or ownership in the corporation and no authority to negotiate on the defendants' behalf. However, they offered no evidence to confirm either of these statements.

10

excess of two months in which to file their answer since learning of the default. Nothing has prevented them from filing an answer.[10] The defendants have not even stated when the court might expect them to answer, even though the case has been pending for just under one year.

This brings the court to another factor which it is required to consider in determining whether to set aside the default: the existence of a meritorious defense. "In determining whether a defaulted defendant has a meritorious defense '[l]ikelihood of success is not the measure.' . . . Rather, if any defense relied upon states a defense good at law, then a meritorious defense has been advanced." United Coin Meter, 705 F.2d at 845. A defense is sufficient if it contains even a hint of a suggestion which, proven at trial, would constitute a complete defense. INVST Financial Group, Inc. v. Chem-Nuclear Sys., Inc. 815 F.2d 391, 399 (6th Cir. 1987). The key consideration is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default. Id. (citation omitted). In determining whether the defendant has a meritorious defense to the suit, the court must resolve all ambiguous or disputed facts in the light most favorable to the defendant. Berthelsen, 907 F.2d at 621.

Because the defendants have not yet filed their answer to the complaint, the court does not know what their answer would say. The defendants' brief in support does not contain any legal analysis of what their defense(s) will be. The best statement they make is that "[t]hey were innocent of the claims and have shown a meritorious defense to the Plaintiffs' claims in the

---

[10]During the hearing, the defendants disingenuously argued that they believed they would not be permitted to file an answer until after the court set aside the default. There is no basis for this belief. Nothing in the court rules has prevented the defendants from answering at any time, and certainly nothing prevented them from filing a proposed answer as an exhibit to their motion.

affidavits.   Simply put, they did not defame or take any wrongful action against any of these
Plaintiffs.  They paid fair and accurate wages for the hours worked and did not violate any of the
Plaintiff's [sic] rights."  However, this reads like a "general denial," which is generally
insufficient to warrant setting aside a default.  See Smith, 926 F.2d at 1480 ("general denial . . .
did not amount to even a 'hint of a suggestion'" that petitioner had meritorious defense) (citing
INVST Financial Group, 815 F.2d at 398); see also  Sony Corp. v. Elm State Electronics, Inc.,
800 F.2d 317, 320 -321 (2d Cir. 1986) (once in default, defendant could not establish meritorious
defense "by mere conclusory statements"; "[A]lthough in an answer general denials normally are
enough to raise a meritorious defense, the moving party on a motion to reopen a default must
support its general denials with some underlying facts").  Sworn conclusory denials are
insufficient to show the existence of a meritorious defense.  Id., 800 F.2d at 321.

　　　　Here, the denials are not only general and insufficient, but they also do not address all of
the claims in the complaint.   For instance, although the Hermizes' affidavits state that plaintiffs
have been paid "according to the agreements we had in place and in accordance with the laws of
this State[,]" the complaint asserts no claims that *State* wage laws have been violated; instead,
plaintiffs allege that the FLSA, a *federal* statute, has been violated.  The defendants have cited
no precedent or included any discussion of why any agreements they allegedly had in place
would operate to legally excuse compliance with the FLSA.  Moreover, although the affidavits
conclusorily state that plaintiffs were "fairly independent" and worked flexible hours, the
defendants have not claimed that plaintiffs are exempt from the FLSA, nor do the defendants
deny that the statute applies to their business.  In addition, if the defendants are attempting to
claim a defense of "good faith," they have not succeeded in doing so; they have not even
addressed any legal principles which would apply to such a defense.

The Hermizes also state, in their affidavits, that "If there has been a shortfall in what was owed" to plaintiffs, "we have attempted to work out compromises in order to avoid litigation costs for all concerned."  This is hardly a meritorious defense to the claims.  In fact, the purported attempt to settle, even if undertaken in good faith (which is not established),  has no relevance whatsoever to a "meritorious defense" analysis under the case law.

The Hermizes also assert that they have never made a "false accusation" against plaintiffs and that "No one was accused of a criminal act."  This appears to their attempt to assert a defense to the plaintiffs' state law claims of defamation.  However, elsewhere in their affidavits, the Hermizes accuse the plaintiffs of conspiring with an unidentified "business competitor" by bringing "unfounded" claims.   Under the circumstances, it is not clear to the court whether they deny having accused plaintiffs of stealing or other misconduct.   In addition, and not incidentally, the Hermizes also state that the purported "business competitor" "basically hired them all away."  However, this is non-responsive to the federal claims of three of the plaintiffs that they were fired for engaging in protected activity.  Moreover, the Hermizes do not respond at all to the allegations that they required plaintiffs to falsify their hours and that deductions taken from plaintiffs' pay were not broken down into categories.

The final factor requires consideration of whether setting aside the default would prejudice plaintiffs.  Plaintiffs do not claim any specific prejudice, apart from having a "long wait for justice" and to "start this litigation all over."  However, "[m]ere delay in satisfying a plaintiff's claim, if it should succeed at trial, is not sufficient prejudice to require denial of a motion to set aside a default judgment."  United Coin Meter, 705 F.2d at 845.  "To establish prejudice, the plaintiff must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion."  Berthelsen, 907 F.2d

13

at 621.  The plaintiffs have not specifically alleged that the delay will have these consequences.[11]

The court finds that the prejudice factor weighs in favor of the defendants.  However, the defendants have not met their burden of establishing that the default was not willful, nor have they met their burden of presenting a meritorious defense to the claims.  Satisfaction of the prejudice factor alone is not sufficient to justify setting aside the default.  This is particularly true here, where even though the defendants' blame their former counsel for default, their current counsel's conduct provides the court with little hope that the year 2008 will produce much more progress on the defense than the year 2007 produced.  Under the circumstances, the court is unable to conclude that the default should be set aside.

Their default on the issue of liability does not, of course, prevent the defendants from litigating the issue of damages, which has yet to be resolved.  In support of their motion for entry of default judgment, plaintiffs have submitted affidavits setting out the amount of damages claimed by each plaintiff.  However, these affidavits are not conclusive because the damages are unliquidated; therefore, the amount of damages must be proved.  Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110 -111 (6th Cir. 1995); see Kelley v. Carr, 567 F.Supp. 831, 841 (W.D.Mich. 1983) ("A default judgment on well-pleaded allegations establishes only defendant's liability; plaintiff must still establish the extent of damages.").   This will require an evidentiary hearing, where the defendants will have the opportunity to contest the amount of damages.  Antoine, 66 F.3d at 110.  Therefore, although the defendants are bound on the issue of liability, they still

_____

[11]Because the plaintiffs have not provided verified evidence of Mr. Yousif's purported threat to close LA Insurance to prevent plaintiffs' recovery in the event of a judgment, the court is unable to consider this as a circumstance creating the possibility for prejudice.

have the opportunity to respond to the issue of damages.  <u>Id</u>. at 111.

<div align="center"><u>**Conclusion**</u></div>

The motion to set aside the entry of default is **denied**.

Entered this 10th day of December, 2007.

<div style="margin-left: 50%"><u>/s/ Wendell A. Miles</u><br>Wendell A. Miles, Senior Judge</div>